UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| Charles Chandler, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:09-CV-59 |
| | : | |
| Eric Albright, | : | |
| Christopher Lora, John | : | |
| Waitekus, Francis | : | |
| LaBombard, Vermont State | : | |
| Police, | : | |
| Defendants. | : | |

OPINION AND ORDER
(Paper 8)

Plaintiff Charles Chandler, proceeding *pro se*, brings this action claiming that the defendants entered his home without a warrant, seized certain property, and otherwise violated his constitutional rights. Currently before the Court is the defendants' motion to dismiss (Paper 8). For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

Factual Background

For the limited purpose of ruling on the motion to dismiss, the facts alleged in the complaint will be accepted as true. The complaint alleges that on October 3, 2008, at approximately 7:05 p.m., two Vermont State Troopers entered Chandler's home/office in Newfane, Vermont, pointed their weapons at the plaintiff and his fiancee, and asked about the location of any guns. Chandler told the Troopers that he had no guns and asked them to leave his

property.  The Troopers declined, exited the room and walked downstairs.  Chandler identifies the two Troopers as defendants Francis LaBombard and John Waitekus.

Chandler then proceeded to the front door of his house, where he could see the defendants' supervisor, Trooper Eric Albright, and Trooper Christopher Lora.  Chandler complained to Albright that the Troopers were "deliberately threatening, harassing, assaulting and illegally searching the Plaintiffs [sic] property."  (Paper 1 at 3).  He again ordered them to leave, but the Troopers remained.

Trooper Albright told Chandler that a witness had seen Chandler arguing with someone at his home at approximately 6:30 p.m., and later heard "something that sounded like a gun shot or possibly a car back fire."  Id.  Chandler challenged Albright's account, informing him that he had been shopping in New Hampshire at 6:30 p.m., and producing a receipt from a New Hampshire Wal-Mart indicating a transaction at 6:33 p.m.

Albright allegedly asked Chandler if he could search the premises.  "The Plaintiff clearly said . . . No . . . and said I want all of you out of here."  Id. at 4.  Albright allegedly responded that he and the other Troopers "were going to search anyway," which they proceeded to do.  Id.  In addition to the property search, Trooper Waitekus conducted a frisk of Chandler while holding a 12 gauge pump shotgun, but found nothing.

2

Chandler claims that "[t]his kind of behavior continued for approximately 30 minutes longer." Id. He also reports having seen Vermont State Police vehicles conducting surveillance of his home/business in the weeks prior to "this ordeal." Id.

After the defendants left, two of Chandler's employees allegedly informed him that the Troopers had urged them to "say that 'Chandler was here arguing and shooting.'" Id. at 5. Chandler also discovered that a window had been broken in his utility truck, and that paperwork, "exhibits pertaining to three State Police," and a bottle of prescription medicine had been seized, along with $10,112.00 in cash. Chandler claims that he was not given a receipt for these items.

The complaint brings sixteen causes of action. Count one accuses Trooper Albright of holding Chandler against his will in violation of his Fourth Amendment right to be free from warrantless searches and seizures, and of inadequate supervision. Counts four, seven, and ten bring nearly identical claims against defendants, Lora, Waitekus and LaBombard, respectively.

Count two claims that Albright "by and through his officers' acts were to seize Plaintiffs [sic] image, embarrass, humiliate, harass, intimidate, and deliberately inflict emotional and physical injury upon the Plaintiff which he succeeded in doing." Id. at 6. Chandler asserts that these claims entitle him to damages under 42 U.S.C. § 1983. Counts five, eight, and eleven

3

bring nearly identical claims against defendants, Lora, Waitekus and LaBombard, respectively.

Count three alleges a violation of Chandler's equal protection rights under the Fourteenth Amendment, insofar as Albright "and his officers assaulted and battered and tortured and further caused physical and emotional injury to the Plaintiff." The same allegation is brought against defendants Lora, Waitekus and LaBombard in counts six, nine and twelve, respectively.

Counts 13 through 16 are brought against the Vermont State Police. Count 13 seeks to hold the State Police liable for constitutional harm and violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") by Trooper Albright. Counts 14, 15 and 16 do the same with respect to Troopers Lora, Waitekus and LaBombard, respectively.

For relief, the complaint requests compensatory damages, punitive damages, and attorney's fees. Chandler also asks for a protective order barring the individual defendants, the Windham Count Sheriff's Department, and the Vermont State Police from having "any contact with the Plaintiff or his family." Id. at 13. Finally, Chandler asks the Court to cite the individual Troopers "with a Criminal Complaint . . . and prohibit them from holding any public office until the outcome of their Criminal case." Id.

The defendants have moved to dismiss, arguing first that all claims against the Vermont State Police, as well as any damages claims brought against the individual Troopers in their official capacities, are barred by the Eleventh Amendment. The defendants also submit that Chandler has failed to state a valid RICO claim. As to the individual defendants, the motion to dismiss contends: (1) that Chandler has not alleged sufficient facts for supervisory liability; (2) that infliction of embarrassment and seizure of Chandler's image are not constitutional violations; (3) that Chandler has failed to state an equal protection claim; and (4) that the defendants are entitled to qualified immunity. The motion to dismiss does not address Chandler's search and seizure claims in counts one, four, seven and ten.

## Discussion

The defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). As such, their motion tests the legal rather than the factual sufficiency of Chandler's complaint. See, e.g., Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). Accordingly, the Court must accept the

5

factual allegations in the complaint as true, <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007), and draw all reasonable inferences in favor of the plaintiff. <u>Bolt Elec., Inc. v. City of New York</u>, 53 F.3d 465, 469 (2d Cir. 1995).

The Supreme Court has held that the standard governing a complaint's legal sufficiency is one of "plausibility." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556-60 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). This standard does not require a probability of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Pleadings drafted by a *pro se* party must be liberally construed. <u>Fernandez v. Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006).

I. <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment of the United States Constitution prohibits suits brought in federal court by citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitutional

6

immunity by Congress.  See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984).  The Eleventh Amendment also bars claims for damages brought against state employees sued in their official capacities.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Pennhurst, 465 U.S. at 102.

Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that immunity by Congress.  In fact, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment.  See 12 V.S.A. § 5601(g).  Accordingly, since the Vermont State Police is clearly a state agency, the agency is protected from suit in federal court regardless of the type of relief requested, and all claims against it are DISMISSED.  Alabama v. Pugh, 438 U.S. 781, 782 (1978).  As to the individual defendants, the damages claims brought against them in their official capacities are also DISMISSED.

II.  Supervisor Liability

The defendants next argue that Chandler has failed to state a claim for supervisor liability in counts one, four, seven and ten.  Count one alleges that defendant Albright "allowed his Officers to torture or inflict physical and emotional harm upon the Plaintiff."  (Paper 1 at 6).  It also accuses Albright of

7

direct participation in unconstitutional conduct.  The same language is set forth in counts four, seven and ten with respect to the three other individual defendants.  In the "Factual Allegations" section of the complaint, Albright is the only defendant referred to as a supervisor.

The Second Circuit has held that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on *respondeat superior*.

> '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*.'  Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citing Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)). To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations.  See Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995).  By the same token, however, mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).
>
> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."  Hernandez, 341 F.3d at 145; see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).

The defendants submit that because "Chandler alleges direct liability against each [defendant], and no basis for supervisory liability, the supervisory liability claims should be dismissed." (Paper 8 at 4.)  Direct participation, however, is perhaps the most obvious way in which a supervisor *may* be held liable under § 1983.  Furthermore, each of the defendants was present at the scene and, presumably, was aware of what was happening.  If the allegations in the complaint took place at the direction of supervisors, were conducted by supervisors, or were undertaken with the knowledge of supervisors who then failed "to act on information that unconstitutional acts were occurring," those supervisors may be held liable under § 1983.  Hernandez, 341 F.3d at 145.  The motion to dismiss Chandler's claims for supervisory liability is, therefore, DENIED.

III. Harassment, Intimidation and Image Seizure

In counts two, five, eight and eleven, Chandler alleges that the defendants sought to "seize [his] image, humiliate, harass, intimidate, and deliberately inflict emotional injury upon Plaintiff."  His sole legal citation in this cause of action is to 42 U.S.C. § 1983.  None of his claims, however, allege unconstitutional conduct.

Specifically, Chandler fails to set forth any facts to explain his "image seizure" claim, either in his complaint or in

9

response to the defendants' motion to dismiss. His claims of harassment and intimidation, while perhaps factually supported, do not fall within the purview of § 1983. See Calderon v. Wheeler, 2009 WL 2252241, at *13 (N.D.N.Y. July 28, 2009) ("42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.") (citing Alnutt v. Cleary, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); see also Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (stating that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983"). Similarly, Chandler's claim that he was humiliated does not rise to the level of a constitutional claim. See, e.g., Caldarola v. City of Westchester, 142 F. Supp. 2d 431, 441 (S.D.N.Y. 2001) (no constitutionally protected interest in being free from reputational injury). Counts two, five, eight and eleven are, therefore, DISMISSED.

IV. Equal Protection Claims

The defendants next argue that Chandler has failed to state a valid equal protection claim. An equal protection claim must set forth two elements: (1) that the plaintiff was treated differently than others similarly situated, and (2) that this differential treatment was motivated by an intent to discriminate

on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.  Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004); Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000).  A plaintiff need not necessarily show that he is a member of a particular protected group, so long as he alleges that he has been "treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Chandler has not set forth any facts about "others similarly situated."  Nor has he alleged facts sufficient to state a claim of discriminatory intent.  While he charges the defendants with conduct that, if proven true, may have been unconstitutional, there is no support in the complaint for a claim that his treatment was "differential" in any way.  Counts three, six, nine and twelve are, therefore, DISMISSED.

V. Qualified Immunity

The defendants' final argument is that they are entitled to qualified immunity on all claims exclusive of Chandler's Fourth Amendment search and seizure claims.  (Paper 8 at 6-7).  Those Fourth Amendment claims, and any associated supervisory liability, are the only remaining claims in the case.  Because

the question of supervisory liability is linked to the constitutionality of the searches and seizures, the Court will not grant the defendants qualified immunity at this time.

<u>Conclusion</u>

For the reasons set forth above, the defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, the motion to dismiss counts two, three, five, six, eight, nine, and eleven through sixteen is GRANTED, and those counts are DISMISSED. The motion is otherwise DENIED.

The parties shall file a proposed Stipulated Discovery Schedule/Order pursuant to L.R. 26.1(b) on or before September 11, 2009.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 12th day of August, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge